IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **STEVEN WALKER,** *Plaintiff,* | § § § § | |
| v. | § § | **CIVIL NO. 1-17-CV-00372-ADA** |
| **CHIEF BRENT STROMAN, IN HIS INDIVIDUAL CAPACITY; DET. MANUEL CHAVEZ, IN HIS INDIVIDUAL CAPACITY; SHERIFF PARNELL MCNAMARA, IN HIS INDIVIDUAL CAPACITY; ABELINO "ABEL" REYNA, DISTRICT ATTORNEY OF MCLENNAN COUNTY, IN HIS INDIVIDUAL CAPACITY; JOHN DOE, EMPLOYEE OF THE TEXAS DEPARTMENT OF PUBLIC SAFETY; AND JOHN DOE, M.D., EMPLOYEE OR POSSIBLE CONTRACTOR FOR MCLENNAN COUNTY SHERIFF'S OFFICE;** *Defendants.* | § § § § § § § § § § § § § § § § § § § § | |

## ORDER

Before the Court are: Defendant Stroman and Chavez' Motion to Dismiss (ECF No. 36), Defendant Reyna, McNamara, and Doe's Motion to Dismiss (ECF No. 37), and the respective responses, replies, and sur-replies thereto. The Court, having considered the Motions and applicable law, finds that the Motions should be **GRANTED** as discussed below.

### I. INTRODUCTION

This case stems from the Twin Peaks restaurant incident on May 17, 2015. Members of the Bandidos and Cossacks Motorcycle Clubs, along with hundreds of other motorcycling enthusiasts, converged on the restaurant. Tensions between the Bandidos and Cossacks erupted in a shootout that left nine dead and many injured. In the aftermath of the incident, police

1

arrested 177 individuals on charges of Engaging in Organized Criminal Activity. The probable cause affidavit in support of the arrest warrants was the same for each of the 177 arrestees, and a justice of the peace set bond for each of the arrestees at one million dollars. Only one of the criminal cases ever went to trial (the defendant in that case is not a party to the instant action), and those proceedings ended in a mistrial. The state eventually dropped all remaining charges against the arrestees. The Plaintiff in this case was arrested pursuant to the same probable cause affidavit as the other arrestees.

The Plaintiff brings this case pursuant to 42 U.S.C. § 1983. He alleges that the defendants violated his Fourth Amendment rights by obtaining arrest warrants based on an affidavit that lacked probable cause. Plaintiff also alleges that the defendants violated his Fourteenth Amendment due process right to be free from unlawful arrest. Plaintiff alleges that the Defendants conspired to commit these violations.

There are two groups of defendants in this case. The first group consists of Brent Stroman, and police officer Manuel Chavez. The second group is former McLennan County District Attorney Abelino "Abel" Reyna, McLennan County Sheriff Parnell McNamara, and two unnamed defendants: John Doe, and John Doe M.D. both of whom are employed by McLennan County. Notably, Plaintiff brings suit against all defendants exclusively in their individual capacity. Plaintiff has not named or served the City of Waco or McLennan County as defendants. The individual defendants all assert qualified immunity.

## II.  LEGAL STANDARDS

Title 42 U.S.C. § 1983 creates a cause of action against any person who, under color of law, causes another to be deprived of a federally protected constitutional right. Two allegations are required to state a cause of action under 42 U.S.C. § 1983. "First, the plaintiff must allege

that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Manax v. McNamara*, 842 F.2d 808, 812 (5th Cir. 1988).

Upon motion or sua sponte, a court may dismiss an action that fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6); *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006). To survive Rule 8, a nonmovant must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The court begins by identifying which allegations are well-pleaded facts and which are legal conclusions or elemental recitations; accepting as true the former and rejecting the latter. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court need not blindly accept every allegation of fact; properly pleaded allegations of fact amount to more than just conclusory allegations or legal conclusions "masquerading as factual conclusions." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). The court then determines whether the accepted allegations state a plausible claim to relief. *Id.* at 379.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "The plausibility

standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* For purposes of Rule 12(b)(6), "pleadings" include the complaint, its attachments, and documents referred to in the complaint and central to a plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–499 (5th Cir. 2000).

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action barred by qualified immunity. *See Bustillos v. El Paso Cnty. Hosp. Dist.*, 226 F. Supp. 3d 778, 793 (W.D. Tex. 2016) (Martinez, J.) (dismissing a plaintiff's claim based on qualified immunity). Qualified immunity shields government officials from civil liability for claims under federal law unless their conduct "violates a clearly established constitutional right." *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). Qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law," the Fifth Circuit considers qualified immunity the norm and admonishes courts to deny a defendant immunity only in rare circumstances. *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)) (internal quotation marks omitted).

Courts use a two-prong analysis to determine whether an officer is entitled to qualified immunity. *Cole v. Carson*, No. 14-10228, 2019 WL 3928715, at *5 (5th Cir. Aug. 20, 2019), *as revised* (Aug. 21, 2019). A plaintiff must show (1) the official violated a constitutional right; and (2) the constitutional right was "clearly established" at the time of the defendant's alleged misconduct. *Reed v. Taylor*, 923 F.3d 411, 414 (5th Cir. 2019). The Supreme Court held in *Pearson* that "the judges of the district courts . . . should be permitted to exercise their sound

discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." 555 U.S. at 236. Although qualified immunity is an affirmative defense, the plaintiff bears the burden to rebut the defense and assert facts to satisfy both prongs of the analysis. *Brumfield*, 551 F.3d at 326. If a plaintiff fails to establish either prong, the public official is immune from suit. *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407 (5th Cir. 2007).

A heightened pleading requirement is imposed on a civil rights plaintiff suing a state actor in his individual capacity. *Elliott v. Perez*, 751 F.2d 1472, 1479 (5th Cir. 1985). To satisfy the heightened pleading requirement and maintain a § 1983 action against an official who raises a qualified immunity defense, a complaint must allege with particularity all material facts establishing a plaintiff's right of recovery, including "detailed facts supporting the contention that [a] plea of immunity cannot be sustained." *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 954 F.2d 1054, 1055 (5th Cir. 1992). Mere conclusory allegations are insufficient to meet this heightened pleading requirement. *Elliott*, 751 F.2d at 1479.

### III. ANALYSIS

**A. Statute of Limitations**

In determining the applicable limitations period in a § 1983 action, the court looks to the forum state's personal injury limitations period. *See Winzer v. Kaufman Cty.*, 916 F.3d 464, 470 (5th Cir. 2019). In Texas, that limitations period is two years. *Id.*

In general, the plaintiff must make an amendment to change the name of a party within the applicable limitations period or relate back to the date of the original complaint. Fed. R. Civ. P. 15(c). However, to relate back, the plaintiff must show that the added defendant received adequate notice of the original lawsuit. Additionally, the plaintiff must show that the defendant

knew that, but for a mistake concerning the identity of the defendant, the action would have originally been brought against the defendant. *Winzer*, 916 F.3d at 470. Both of these requirements must occur within the period provided by Rule 4(m). *Id.* The period allowed by Rule 4(m) for service of the summons and complaint is 90 days after the filing of the complaint. *See* FED. R. CIV. P. RULE 4(m).

Rule 15(c) "is meant to allow an amendment changing the name of a party to relate back to the original complaint only if the change is the result of error, such as a misnomer or misidentification." *Jacobsen*, 144 F.3d at 320 (internal quotations omitted). An amendment to substitute a named party for a John Doe defendant may not relate back to the filing of the original complaint under Rule 15(c)(3) to prevent a lapse in the limitations period. *Jacobsen*, 133 F.3d at 320–21.

In this case, Plaintiff filed the original complaint listing two John Does with only twenty-two days to spare on the statute of limitations. On June 20, 2017, Plaintiff filed an amended complaint with this Court, but Plaintiff still named two John Does. On June 28, 2017, this Court granted an order staying the case. The order was lifted on December 3, 2018. Plaintiff filed an amended complaint with this Court on January 17, 2020, but he still has not identified Trooper Doe or Doctor Doe. Assuming *arguendo* that Rule 15(c) even allows an amendment to substitute a name party for a John Doe, both the period allowed by Rule 4(m) and the two-year statute of limitations period have long passed. Accordingly, all claims against Trooper Doe and Doctor Doe are barred by the statute of limitations and should be **DISMISSED**.

**B.** *Malley* **and** *Franks*

At the outset, the Court notes that Plaintiff brings his claims against the defendants under both the Fourth and Fourteenth Amendments. But "[w]here a particular Amendment provides an

explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal punctuation omitted). A citizen has a right under the Fourth Amendment to be free from arrest unless the arrest is supported by either a properly issued arrest warrant or probable cause. *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004). "The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." *Albright*, 510 U.S. at 274. Because the Fourth Amendment covers unlawful arrest, Plaintiff cannot also seek relief under the Fourteenth Amendment. *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 814 (5th Cir. 2010). Accordingly, Plaintiff's Fourteenth Amendment claims are **DISMISSED**, and the Court will address his claims in the context of the Fourth Amendment.

There are two claims against government agents for alleged Fourth Amendment violations in connection with a search or arrest warrant: (1) claims under *Malley*, 475 U.S. at 335, for which the agent may be liable if he "fil[es] an application for an arrest warrant without probable cause" and "a reasonable well-trained officer . . . would have known that [the] affidavit failed to establish probable cause," *Michalik v. Hermann*, 422 F.3d 252, 259–60 (5th Cir. 2005) (citations and internal quotation marks omitted); and (2) claims under *Franks v. Delaware*, 438 U.S. 154 (1978), for which the agent may be liable if he "makes a false statement knowingly and intentionally, or with reckless disregard for the truth that results in a warrant being issued without probable cause," *Michalik*, 422 F.3d at 258 n.5. In the instant case, Plaintiff brings claims under both theories.

**C. *Malley* violation**

Plaintiff alleges that the defendants violated his Fourth Amendment rights by presenting a facially deficient warrant affidavit. ECF 35 at 28. He argues that the warrant is a general warrant, devoid of sufficient particularized facts related to any of the plaintiffs. *Id.* He argues that the affidavit does not contain any specific facts which would constitute probable cause, but rather, conclusory statements, and that any facts it does contain are false. *Id.*

A *Malley* violation is not the presentment of false evidence, but the obvious failure of accurately presented evidence to support the probable cause required for the issuance of a warrant. In *Spencer v. Staton*, an arrestee brought a § 1983 action alleging that she was arrested on a facially invalid warrant that was unsupported by probable cause. 489 F.3d 658, 661 (5th Cir. 2007). The affidavit contained only the arrestee's biographical and contact information, the charged offense, and a conclusory statement that she had committed the crime of assisting others in evading authorities. *Id.* The Fifth Circuit held that this was "a textbook example of a facially invalid, 'barebones' affidavit." *Id.*

In *Kohler v. Englade*, police searching for a serial killer sought a DNA sample from the plaintiff during a criminal investigation. 470 F.3d 1104, 1107 (5th Cir. 2006). A detective prepared an affidavit for a seizure warrant that offered no indication as to the identity or credibility of a tipster who implicated the plaintiff, nor did the affidavit indicate any corroborating evidence to support the tip. *Id.* at 1110–11. Additional information in the affidavit regarding Kohler's twenty-year-old burglary conviction, employment status, his past employment with a company with a secondary shop on a road where items belonging to one of the victims were found, and refusal to voluntarily submit to a saliva swab, failed to establish probable cause that he was the serial killer. *Id.* at 1111. "Even when considered in their totality,

the circumstances set forth in the affidavit failed to provide a nexus" between the plaintiff's DNA and the serial killings. *Id.*

In *Blake v. Lambert*, a challenged affidavit merely identified the plaintiff and recited the charge and relevant statute. 921 F.3d 215, 220 (5th Cir. 2019). The affidavit did not provide enough supporting facts to establish probable cause, such as the officer's experience, the sources of the information in the affidavit or the reliability of those sources, or his conversations with the plaintiff during his investigation. *Id.* at 220–21. The Fifth Circuit found this to be a "textbook example" of a facially invalid affidavit. *Id.* (citing *Spencer*, 489 F.3d at 658).

The affidavit at issue in the instant case stated:

> My name is MANUEL CHAVEZ and I am commissioned as a peace officer with the City of Waco by The State of Texas. I hereby state upon my oath that I have reason to believe and do believe that heretofore, and before the making and filing of this Complaint, that on or about May 17, 2015, in McLennan County, Texas, the said _____ did then and there, as a member of a criminal street gang, commit or conspire to commit murder, capital murder, or aggravated assault, against the laws of the State.
>
> My probable cause for said belief and accusation is as follows:
>
> Three or more members and associates of the Cossacks Motorcycle Club (Cossacks) were in the parking lot of the Twin Peaks restaurant in Waco, McLennan County Texas. Three or more members and associates of the Bandidos Motorcycle Club (Bandidos) arrived in the parking lot of the Twin Peaks restaurant and engaged in an altercation with the members and associates of the Cossacks. During the course of the altercation, members and associates of the Cossacks and Bandidos brandished and used firearms, knives or other unknown edged weapons, batons, clubs, brass knuckles, and other weapons. The weapons were used to threaten and/or assault the opposing factions. Cossacks and Bandidos discharged firearms at one another. Members of the Waco Police Department attempted to stop the altercation and were fired upon by Bandidos and/or Cossacks. Waco Police Officers returned fire, striking multiple gang members. During the exchange of gunfire, multiple persons where shot. Nine people died as a result of the shooting between the members of the biker gangs. Multiple other people were injured as a result of the altercation. The members and associates of the Cossacks and Bandidos were wearing common identifying distinctive signs or symbols and/or had an identifiable leadership and/or continuously or regularly associate in the commission of criminal activities. The Texas Department of Public Safety maintains a database containing information identifying the Cossacks and their associates as a criminal street gang and the Bandidos and their associates as a criminal street gang.

9

> After the altercation, the subject was apprehended at the scene, while wearing common identifying distinctive signs or symbols or had an identifiable leadership or continuously or regularly associate in the commission of criminal activities.
>
> After the altercation, firearms, knives or other unknown edged weapons, batons, clubs, brass knuckles, and other weapons were recovered from members and associates of both criminal street gangs.
>
> Multiple motorcycles with common identifying signs or symbols of the Cossacks and Bandidos and their associates were recovered at the scene. Additional weapons including: firearms, ammunition, knives, brass knuckles, and other weapons were found on the motorcycles.
>
> *[signature] Mel Chg 258*
> Complainant
>
> SWORN TO AND SUBSCRIBED BEFORE ME BY SAID AFFIANT/COMPLAINANT ON THIS THE 18th DAY OF may, 2015.
>
> *[signature]*
> JUSTICE OF THE PEACE
> MCLENNAN COUNTY, TEXAS

ECF No. 36 at Ex. 1. Defendants' assertion of qualified immunity requires the Court to first ask "whether a reasonably well-trained officer . . . would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley*, 475 U.S. at 345. In evaluating the existence of probable cause within an affidavit, the Court must consider the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983).

Considering the affidavit against *Malley* caselaw, the affidavit in this case is a significant improvement upon the "classic bare bones affidavit" in *Spencer*. *See* 489 F.3d at 661. Again, the *Spencer* affidavit merely recited the offense then added a conclusory statement that the individual committed that offense. *Id*. Defendant Chavez's affidavit, prepared in the context of a melee involving multiple shootings and 177 arrests, clearly identifies the subject, the offense, the parties involved, the time and circumstances under which they met, what they wore, identifying

10

characteristics, and the weapons they used. Unlike the circumstances in *Kohler v. Englade*, the affidavit offers a nexus between the Plaintiff and the alleged crime. The affidavit here is also very unlike the *Blake* affidavit, which merely identified the plaintiff and recited the charge and relevant statue.

In sum, Defendant Chavez's affidavit is not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) (quoting *Leon*, 468 U.S. at 923). Accordingly, Plaintiff fails to overcome Defendants' qualified immunity, and dismissal is appropriate.

## D. *Franks* violation

"A governmental official violates the Fourth Amendment when he deliberately or recklessly provides false, material information for use in an affidavit in support of a search [or arrest] warrant." *Hart v. O'Brien*, 127 F.3d 424, 449 (5th Cir. 1997). In the context of § 1983 claims asserting Fourth Amendment violations, a governmental official is:

> liable for swearing to false information in an affidavit in support of [an arrest] warrant, provided that: (1) the affiant knew the information was false or [acted with] reckless disregard for the truth; and (2) the warrant would not establish probable cause without the false information.

*Id.* at 442 (citing *Franks*, 438 U.S. at 171). "[T]he fact that a government official did not sign or draft the affidavit in support of a warrant does not preclude his or her liability for Franks violations." *Melton v. Phillips*, 837 F.3d 502, 508 (5th Cir. 2016). An agent can be liable when he deliberately or recklessly provides false information to another agent, who then includes the misinformation. *Id.* at 507–08.

"To prove reckless disregard for the truth [a plaintiff] must present evidence that [the defendant] 'in fact entertained serious doubts as to the truth' of the relevant statement." *Hart*, 127 F.3d at 449 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968)); *Melton*, 837 F.3d at

11

509. "Whether a defendant in fact entertained serious doubts as to the truth is necessarily a fact question." *Id.* at 509–10. The plaintiff, however, must file a complaint that rests on more than conclusions alone. *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996).

In their amended complaint, Plaintiff's *Franks* claim alleges that Defendant Chavez deliberately or recklessly included false information in the warrant affidavit, and that every operative fact alleged in the affidavit is false. ECF No. 35 at 13. Plaintiff also alleges that Defendants Stroman and Reyna each knew that the affidavit was materially false and misleading, but they still presented it to the Magistrate Judge anyway. *Id.* at 30. Lastly, Plaintiff alleged that Defendant Chavez swore to the affidavit, knowing or recklessly disregarding that it was false. *Id.*

Defendants argue that Plaintiff's Complaint makes conclusory allegations without any factual support. ECF No. 36 at 13; ECF No. 37 at 23. In their reply to Plaintiff's response, Defendants point out that Plaintiff failed to even respond to Defendants' arguments concerning the *Franks* claims. ECF No. 43 at 4.

The Court finds that Plaintiff's Complaint only pleads conclusions. Plaintiff's claim that Chavez knew the affidavit was false lacks specific factual allegations. Plaintiff does not state any facts to show that Defendants knew or should have known that the information was false. As an example, Plaintiff contends that since Plaintiff was not in a street gang, Defendants conduct was willful, intentional, and reckless. This conclusory allegation lacks factual detail and particularity. *DeLeon v. City of Dallas*, 141 F. App'x 258, 261 (5th Cir. 2005). This allegation does not meet the heightened pleading standard required in qualified immunity cases. *Id.* Additionally, Plaintiff did not even try to defend his allegation in his response to Defendants' motion to dismiss. *See* ECF No. 40. In sum, Plaintiff failed to demonstrate how Defendants deliberately or recklessly provided false, material information in the affidavit. *See Hart v. O'Brien*, 127 F.3d 424, 449 (5th

Cir. 1997). Accordingly, Plaintiff fails to overcome Defendants' qualified immunity, and dismissal is appropriate.

**E. Conspiracy**

To state a claim for conspiracy under § 1983, a plaintiff must allege the existence of (1) an agreement to do an illegal act; and (2) an actual constitutional deprivation. *Cinel v. Cannock*, 15 F.3d 1338, 1343 (5th Cir. 1994). A claim of conspiracy is not actionable without an actual violation of § 1983. *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995). If each alleged state action fails to overcome the qualified immunity protection, the court does not need to reach the issue of conspiracy for those actions. *Id.* at 920–21.

In this case, Plaintiff alleges that Defendants Stroman, Reyna, Chavez, and Trooper Doe entered into a conspiracy to violate the Plaintiff's Fourth Amendment rights. ECF No. 35 at 33. The claim is dependent upon the existence of that constitutional violation. Thus, the conspiracy claim is inherently contingent upon Plaintiffs' *Franks* and *Malley* claims. Because the Court has already found that the Plaintiff failed to overcome Defendants' qualified immunity, the conspiracy claim is not actionable.

However, even assuming the *Franks* and *Malley* claims were not dismissed, the Court still finds that Plaintiff's conspiracy claim fails to meet the pleading requirements of *Twombly* and *Iqbal*. In Plaintiff's amended complaint, Plaintiff alleges that Defendants met together on May 17 and May 18 to encourage Chavez to swear to false statements and that the records indicated the Defendants had "full knowledge and acquiescence." ECF No. 35 at 33 ¶ 143. Additionally, in their response, Plaintiff points to various testimony by different individuals and suggests that their testimony somehow supports this conspiracy claim. ECF No. 40 at 8. However, the relevant testimony does not attribute actions to any particular person and does not

establish an agreement. Plaintiff asserts conclusory allegations of an agreement between Defendants, and Plaintiff does not supply facts adequate to show illegality. Therefore, the conspiracy claim fails on independent grounds, and dismissal is appropriate.

### F. Municipal liability

Importantly, Plaintiff brings suit against Defendants exclusively in their individual capacity and has not named the City of Waco or McLennan County as defendants in this case. To bring a claim against a municipality, it, just like any other party, must be named as a defendant in the suit at hand. Plaintiff has not done so and thus the claim for municipal liability, in so far as it even exists, is **DISMISSED**.

### G. Failure to Supervise/Provide Medical Care

Finally, Plaintiff asserts that he was denied proper medical care while incarcerated and Defendant McNamara failed to properly supervise the McLennan County Jail staff. ECF No. 35 at 35. However, as previously discussed, any complaint against a John Doe defendant must be dismissed. As such, Plaintiff's only remaining claim is failure to supervise. To state a claim for failure to supervise, a plaintiff must show that: (1) a supervisor failed to supervise a subordinate; (2) a causal link exists between the failure to supervise and the violation of the plaintiff's rights; and (3) the failure to supervise amounts to deliberate indifference. *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (citing *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998)). For an official to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Smith*, 158 F.3d at 912. "To establish deliberate indifference, 'a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the

training is obvious and obviously likely to result in a constitutional violation.'" *Goodman*, 571 F.3d at 395 (citing *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003).

Here, Plaintiff alleges that he was not given required medicine for his medical condition and alleges that Defendant McNamara failed to properly supervise McLennan County Jail personnel, which resulted in his loss of medical care. ECF No. 35 at 17. Plaintiff provides no allegations implicating Reyna in any alleged denial of medication. *See generally* ECF No. 35. As for Defendant McNamara, Plaintiff does not state that McNamara failed to supervise a given subordinate, does not allege what causal link there was between said failure and his harm, and though he states that this amounted to deliberate indifference, he adds no other facts to support this bare allegation. *Id.* Moreover, Plaintiff failed to any facts that could plausibly establish Defendant McNamara acted with deliberate indifference. *Id.* These allegations are exactly the type precluded by *Iqbal* and its progeny, and they do not constitute plausible claims for relief. Therefore, the Court finds Plaintiff's claims for denial of medical care are **DISMISSED**.

### H. Unlawful Bail Claim

Plaintiff also apparently seeks relief for an unlawful bail cause of action. In the "Damages" section of his complaint, Plaintiff states "[c]onditions placed on Plaintiff's bonds have deprived Plaintiff of rights guaranteed by the constitution." ECF No. 35 at 36. Plaintiff did not state a claim for unlawful bail in his cause of action section or attempt to provide more than the simple, threadbare allegation quoted above. *Id.* Moreover, Plaintiff does not even suggest which defendant imposed the "unlawful bail" or how any of these nonjudicial defendants could have even done so. Finally, Defendants were not involved in setting Plaintiff's bail. Thus, even if Plaintiff did manage to adequately state a claim for unlawful bail (which he did not), none of the Defendants were involved with the setting of Plaintiff's bail and are not the correct Defendants

for this cause of action. Because the single, threadbare allegation in Plaintiff's "Damages" section is not sufficient to survive a motion to dismiss, Plaintiff's unlawful bail claim is **DISMISSED**.

## IV. CONCLUSION

Accordingly, it is **ORDERED** Defendant Stroman and Chavez' Motion to Dismiss is **GRANTED**, and Defendant Reyna and McNamara's Motion to Dismiss is **GRANTED**.

**SIGNED** this 4th day of May 2020.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE